Scribner, J.
This case is brought into this court by way of appeal from the judgment rendered by the court of common pleas.
On December 26, 1861, one Isaac Hull departed this life, being the owner at the time of his death of a large amount of property, both real and personal, situated in the county of Lucas. This property consisted largely of farming *689 property, farming utensils and implements, and other personal property usually found on farms. There was also-a number of houses and lots in the village of Maumee, where the decedent resided for a long period of time prior to his death. There were store buildings, dwelling houses and merchandise, household utensils and other property not necessary to enumerate particularly. He left surviving him his widow, Chloe Hull, and two sons, William. Robert Hull and Joseph S. Hull. About a year after the death of the testator, William Robert Hull died and left, as his heir at law, the plaintiff in this action, William I. Hull, and also his widow who has married again, and who. appears in this proceeding as Emma A. Crosby. On August 24, 1858, he made and published his last will and testament, in due form. On December 23, 1864, some three days before his death, he added a codicil to his will, by which he revoked a pecuniary legacy contained in his will,, for one thousand dollars, to his son William Robert Hull, and reaffirmed his will in all other particulars.
The present proceeding was brought partly to adjust and determine the rights of the parties in the property left by the deceased,and partly for a partition of the real estate remaining undisposed of subsequent to the death of the deceased, by arrangement among the parties. The only questions presented to us relate to the construction of certain, provisions contained in the will of the deceased testator in connection with certain transactions growing out of those-provisions, it being suggested on the trial that as to all other matters except those growing out of the disputed construction of the will, an agreement and arrangement had been entered into between the parties. We are not called-upon to decide any matters excepting questions arising out of and resulting from the will which has been mentioned.
Chloe Hull has deceased,and is not at present before the court. One of the principal questions in controversy here-is as to whether or not, under the provisions of the will, the widow was given, by its terms, a life estate, or a full fee-simple estate in certain farm property described in the instrument.
The will is short, and a consideration of all its provisions seems necessary to reach a proper conclusion, and is as follows:
*690 “Be it known that I, Isaac Hull, of Maumee city, Lucas county, do make and publish this may last will and testament.
“Item First. I give and devise to my beloved wife Chloe in lieu of her dower the lots and appurtenances on which I now reside including the brick dwelling house, old brick store, wood.house, well, etc,, with all the household goods, furniture and other property that may be thereon, during her natual life.
“Also I give and bequeath to her lot No. 97 in the old plat of Maumee aforesaid with its appurtenances, with all the goods, wares and mechandise and property of every kind within or upon said lot to me belonging during her natural life.
“Also the farm with its provisions, produce and stock of every kind and implements of husbandry thereto attached, lying'upon and near the plank road running N. W. beyond the residence of A. D. Williams containing four hundred acres more or less.
“Also one sixth part of the toll bridge between Maumee city and Perrysburg with all other property,real and personal,to me belonging, freely to use and enjoy during her natural life, except lot No. 94 in the old plat of Maumee, which I hereby give and bequeath to the heirs of my son Joseph S. Hull.
“Item Second. I do hereby nominate and appoint my sons, Joseph S. Hull and W. Robert Hull, executors of this my last will and testament, hereby authorizing and empowering them to compromise, adjust, release, and discharge in such manner as^they think proper the debts and claims due me.
“Item Third. I dc hereby give and bequeath to my son, W. Robert Hull, the sum of one thousand dollars to be collected from claims and debts due or from funds that may be on hand at my decease,
“Item Fourth. After the decease of my aforesaid wife, Chloe, it is my will that the remainder of all my estate, real and personal, be equally divided between my two sons or their heirs, Joseph S, Hull and W. Robert Hull.
“If it shall become necessary in order to pay my debts, I do hereby authorize and empower my executors aforesaid *691 'to sell by private sale, in such manner as they may think .proper., all or any part of my real estate, and deeds to purchasers to execute, (acknowledge and deliver in fee simple.
“In testimony whereof I have hereunto set my hand and fSeal this 24th day of August, A. D. 1858.
“Isaac Hull (Seal). ”
It will be observed that in the clause immediately preceding the last one which I have read, there are contained ■no words of limitation upon the estate devised,and no words •of perpetuity, and the question is, whether the limitation contained in the concluding clause of that paragraph immediately following applies to and limits the force and effect of the previous clause. I will read it again:
“Also the farm with its provisions, produce and stock of ■every kind and implements of husbandry thereto attached, ¡lying upon and near the plank road running northwest beyond the residence of A. D. Williams, containing four hundred acres more or less.” “Also one-sixth part of the toll bridge between Maumee city and Perrysburg, with all other property, real and personal, to me belonging, freely to use and enjoy during her natural life, except lot No. 94 in the •old plat of Maumee, which I hereby give and bequeath to the heirs of my son, Joseph S. Hull.” “Freely to use and ■enjoy during her natural life.” If the clause or expression ■which I have made use of is to be allowed to attach to both ■of these gifts, then, of course, the widow takes but a life ■estate. If it has no application to the preceding clause, ■then she takes, under the statute, although there are no words ■in perpetuity, an estate in fee. And it is upon the entire will, upon the objects and purposes of the testator to be gathered from the language of the entire will, that we are to resolve this question of doubt arising upon its face, where appears at the commencement of the first clause upon which this question arises, a blank, which, apparently was left for th purpose of filling in the number of acres contained in the tract. The testator has proceeded to write, apparently with his own hand, this will, until he has got to that part of the description which closes by saying: “lying upon and near the plank road running northwest beyond the residence of A. D. Williams, containing — ■” and there follows the blank, and that is filled in, evidently at another *692 time from the face of the writing, with the number of acres according to the estimate of the testator — “four hundred acres more or less;” and that is immediately followed by the other-clause which gives certain other property, and closes with the expression “during her natural life.” That is followed by the exception as to lot No. 94, which is given to the heirs of the son, Joseph S. Hull; and, in respect to that provision, another question arisesjwhich will be considered further-on.
“Item Second. I do hereby nominate and appoint my sons, Joseph S. Hull and W. Robert Hull, executors of' this my last will and testament, hereby authorizing and empowering them to compromise, adjust, release and discharge in such manner as they may think proper the debts, and claims due me.”
“Item 'Third. I do hereby give and bequeath to my son, W. Robert Hull, the sum of one thousand dollars to be collected from claims and debts due or from funds that may be on hand at my decease.” That is the clause revoked by the codicil of December 23, 1864, but the will is not affected in any other respect by the codicil.
“Item Fourth. After the decease,” etc. This item, in our judgment, is of importance in construing this question and in reflecting upon the purpose and intent of the testator at the time he prepared this will.
“Item Fourth. After the decease of my aforesaid wife, Chloe, it is my will that the remainder of all my estate,real and personal, be equally divided between my two sons or their heirs, Joseph S. Hull and W. Robert Hull.” “If it shall become necessary in order to pay my debts, I do hereby authorize and empower my executors aforesaid to sell, by private sale,in such manner as they may think proper, all or any part of my real estate, and deeds to purchasers to execute,acknowledge and deliver in fee simple ”
If the clause in controversy stood alone by itself, that is to say, if that were the only gift to the widow, and there was nothing else in the will tending to qualify the expressions used by the testator in reference to that clause,it would seem tolerably clear perhaps that the object and purpose of the testator was to give to his wife the fee simple of the farm in question. Rut we think that clause, when you *693 come to take the will as a whole and consider it in all its .parts — that it is manifest upon the face of the will that the ■testator intended to apply to the clause in question the limitation that is affixed to all other gifts to the wife, and that •the limitation contained in the cause immediately following was intended to apply to both parcels of property described at that point of the will. ‘ His first gift is to his wife of the lots and appurtenances upon which he resides, including the dwellings, etc., which may be upon it, with all the household goods, furniture and other property that may be thereon during her natural life. And also “I give and bequeath to her lot 97 in the old plat of Maumee aforesaid with its appurtenances, with all the goods, wares and mer- • chandise and property of every kind within or upon said lot ■■to me belonging, during her natural life. Also the farm with its provisions, etc., containing four hundred acres more or less. Also one sixth part of the bridge,' etc., * * •freely to use and enjoy during her natural life. ” * *
We cannot resist the conviction and it appears to us that upon the face of this instrument, taking the terms and provisions in all their parts, that the testator intended to apply the same limitation upon the gift of the farm property as is applied to the other property, and the view we take is .greatly strengthened by the fourth clause, which provides that after the decease of the widow — “It is my will that all the remainder of my estate, real and personal, be equally divided between my two sons,” etc. The object and purpose, as it seems tc us, of the testator was to give the use of all this property to his wife excepting this one lot withdrawn from its operation, and that after his death it should be divided equally between his two sons. If by the terms “The remainder of all my estate real and personal, ” contained in the fourth clause of his will, the testator meant the property not before described in the will, and did not mean to include the entire remainder in the lands which were specifically devised to his wife for life, then he died intestate as to such entire remainder; for unless the estate in the‘3remainder so devised comes within the operation of this clause, it remains undisposed of. If that clause was intended to apply to and dispose of so much of the property which the widow might lawfully use for her subsistence *694 and should remain unconsumed at her death, and is limited to that, then thejremainder in fee in the lands secured to the wife for life would in like manner remain undisposed of, If it was intended to apply to the lands which had been already devised in fee, then it would be inoperative, as inconsistent with such devise. In our opinion, the fourth clause of- the will was intended to, and did embrace the estate in remainder in the lands devised to the widow for life, and, in that sense, the term was used to apply to all the property described in the will as being given to the wife..
It was suggested in'the argument that if that should be the construction as to this particular farm, the same effect would be given as to the devise of lot 94 to the heirs of the son Joseph. But it will be observed that as to this devise it is the only one that is made to the son or to any other person outside of the devise or bequest made to the wife — ■ to the widow; that is to say, all the other property, both real and personal,is given to the widow; at her death it is to-be divided equally between the two sons, excepting, however, from the general language by which all of the property not before described is given to the wife for her life, this-particular lot 94, and we do not feel that in giving to the language of the whole will, such a construction as vests in the widow the property for her use during her life, that we are doing any violence to the language used, in holding that as to lot 94, specifically devised to the children of the-son, this limitation did not apply.
There was introduced upon the trial, under objection and exception, a large amount of testimony tending to show- — - or I might say in advance of that — that after the death of the testator the widow, with the aid and assistance of' Joseph, and probably the other son, conducted a merchandizing business at Maumee, the business which had been left by the testator; and this was in compliance with a suggestion contained in the codicil, that his business should be carried on by the wife, with a view of giving aid and assistance to the son employed in the business. She became bankrupt, and proceedings in bankruptcy were taken against her. In the course of those proceedings the assignee o.f the bankrupt — -the widow — made a sale of all her property, including her interest in this farm property under the will. *695 In the application, this property was described as a life estate. The language of the order of the court was not very clear as to what was sold — or rather, to be sold — except that, if fairly construed, it might be said to order the sale of her interest in this property. By amended proceedings here on the part of the plaintiff, it was insisted that if the widow was invested with a fee under the will, nevertheless in this bankruptcy proceeding it was understood by the assignee and by Joseph — by all parties interested, that in point of fact, in a true construction of the will, she had but a life estate, and if by reason of these proceedings and under the order of the court, Joseph became the purchaser, if Joseph did in fact acquire the fee of the land, yet as to the remainder after the expiration of the life estate of the widow, he held that,it is said, in trust for the creditors if they were unsatisfied, and if they were satisfied, then for the heirs. But, under the view"we have taken of the case, and the construction put upon the will, it is not necessary to consider it now, and the testimony introduced tending to show the understanding of the parties as to the effect of the bankruptcy proceedings we regard as immaterial and irrelevant, and therefore rule it out, subject, however, to the right of the plaintiff in the case to preserve their exception.
Another phase of the case which remains to be discussed is this: In the clause to which reference has already been made, after devising to the widow “with all other property real and personal to me belonging, freely to use and enjoy during her natural life” occurs this: “Except lot No. 94 in the old plat of Maumee, which I hereby give and bequeath to the heirs of my son, Joseph S. Hull.” At the date of this will, the testator was not the owner of lot 94. He was the owner of several lots as numbered upon the old plat of Maumee — there was 95 and 96, 92, 28, and part of 24, if I remember the description correctly. After the making of that will, and before the date of the codicil, he acquired the title to lot 94 in an adjustment that was made between the parties, and acqu red an interest by mortgage and other transactions,and after the death of the testator lot 94 was surrendered to one of the lien-holders in a cross-petition .filed in this case by the children of Joseph S. Hull,and *696 it is claimed that it was intended in and by this will to give to them — to these children —lot 95 instead of lot 94 which the testator didn’t own at the time he made the will, and ■considerable testimony is introduced tending to show that in point of fact the testator did intend in his description ■here to describe lot 95, which he did own at the date of the will, and not to describe lot 94 which he did not own, and that the description of lot No, 94 was due, we may say, to ■a mistake of the scrivener or the testator.
Now, in the view that we take of all the testimony that has been introduced here, we are of opinion that this question is really a matter of no importance in this case. The question, however, as to whether or not it is competent upon the proof of the extrinsic facts and circumstances existing at the date of the execution of this will, to apply the terms of the will to lot 95, instead of to lot 94, is fairly and ■squarely before us, and we are called upon to express an opinion upon it,although we think that the plaintiffs in the cross-petition are entitled to substantial relief whatever our conclusion may be upon this particular proposition. There was a determination by this court a short time since, Judge Moore sitting with my associates in the consideration and determination of the case' — of a question which we think was identical in principle, and thaUwas a case where a testator devised certain lots, say 455 and 456, in a certain addition of Toledo. He did not own lot 455, or lot 456, but he did own lots 155 and 156. Upon very careful consideration of the authorities bearing upon the proposition involved in that case, my brethern and Judge Moore came to the conclusion that no relief could be afforded in the case — ■ that there was nothing in the will itself, when the defective description was stricken out, that would enable the court to apply the devise or gift to the property which it was supposed it was intended should be devised and in reference to which the testator or the scrivener or draughtsmen of the will had undoubtedly made a mistake.
In this case, if the testator by this will had specifically devised all the other lots which he owned as numbered upon the old plat of Maumee, except this lot-95 — be at that time not being the owner of lot 94 — perhaps it would not be doing violence to the rules applicable to such cases to hold *697 that the testator intended thereby to describe lot 95 and to bring the case within the rule which permits that to be done and apply the will to the supposed subject matter; but in this case, there was at least one other lot — -96—as well as lot 95; to which, if the number here were stricken out and' it were left as “lot No. blank” — this description would apply as well as to lot 95, although the proof made in the case tends strongly to show that lot 95 and not 96 was intended by the testator; but that, as it appears to us, would be in the nature of reforming the will by correction rather than making the application of the blank in the will to the supposed subject matter. But, aside from this consideration, these facts appear in the case: About the year
1858, Mr. Joseph S. Hull had made a visit to Kansas. His home before that had been at Maumee. He had gone to Kansas with a view to looking about and determining whether or not he would remove to Kansas with his family. He returned from that visit somewhat undetermined in his mind as to what he had best to do. Thereupon it was proposed to him and his wife, Mrs. Hull, that if he would abandon his contemplated purpose of removing to Kansas and would remain there at Maumee with them, with his father and mother, that he would buy a piece of property for them — -would assist them in improving it and put it in proper shape for them to use and occupy as a home for themselves and their family. This proposition so made by the father was accepted by Joseph S. Hull and his wife, and at the suggestion of their father, Mrs. Hull selected the property which should be theirs. The testator was not the owner of it, but she selected it, and upon her selection it was purchased by the father, and purchased for them and for their home to own for themselves and for their children. At the time of this selection it appears from the testimony • — -which is undisputed — the father rather spoke in terms of approval [and commendation of Mrs. Joseph Hull, of the modesty which she had displayed in the selection of the home which he had authorized her to make, in selecting a home of moderate cost and expense, and it was bought and improved, and Joseph S. Hull and his family were put in *698 possession'of that for their home, and they have occupied it since 1858 under the arrangement so made between them and their father.
Upon a careful examination of the authorities bearing upon this state of facts, we are of opinion that there was a sufficient consideration on the part of Joseph S. Hull moving to the father, in the renouncing and abandoning of his purpose to remove to Kansas and his determination to remain with his father and occupy this property as a home, to constitute a binding obligation on the part of the father to secure to the family this particular lot 95 as a home.
Without stopping to read particularly from the authoiiies referred to and as supporting this proposition, we refer to Waterman on Specific Performance, secs. 271, 283, 284, and to notes on pages 388 and 389. And in a case reported in Law v. Henry, 39 Ind., 414, I find this syllabus:
“Where a father induced his daughter, her husband and children, to break up their residence and remove a long journey, at considerable expense, to a place near his home, that he might enjoy their companionship, by a promise to convey land to the daughter, and he accordingly purchased and placed them in possession of land upon which they made valuable improvements, and of which he made a deed but did not deliver it to his daughter when he died; held in an action by the husband and children (after the death of the daughter) against the father, for the specific performance of the contract, that there was a good valuable consideration for the contract,and it was not within the statute of frauds,and must be enforced in their favor.”
Now, there was not here a breaking up of their home abroad; there was no removal, but that would only go to the extent of the value of the consideration,and not to the principle. The doctrine there laid down, in our judgment, applies here. And the same doctrine is declared in several of the cases cited in Mr. Waterman’s book. There is a case decided in 1876 — Ungeley v. Ungeley, 4 Law Reports, Ch. Div., 73, where this was held by the Lord Chancellor:
“A father verbally promised, in contemplation of the marriage of his daughter, to give her a house as a wedding present, and immediately after the marriage he puts his daughter and her husband in possession. The father was *699 4hen the-owner of the house, which was a leasehold, and was •subject to a charge in favor of a building society, payable in instalments. The father paid those which fell due during his life time, and at his death there remained a balance of £110, which fell due shortly afterwards: Held, that the verbal promise to give the house having been established, the possession was a part performance which took the case out fo the statute of frauds; that the contract was to give the house free from incumbrances, and that the £110 was payable out of the father’s estate.
The father in that case had been making the payments. This case was appealed, and is found again reported in 5 Law Reports, Ch. Div., 887, where upon appeal, all of the judges concurring, the decree of the Vice Chancellor was affirmed.
Now, upon the allegations in the cross-petition of these ■children (one was born before they moved upon this property, and several were born after) the allegations of the cross-petition of the children, which were supported by the proofs, show that — miter showing that they are the children and the only heirs at law of the defendant Joseph- S. Hnll, they set up that during the year 1858, and shortly prior to the making and publication of the said last will and testament, said Isaac Hull purchased said lot 95; that he was mot the owner of lot 94; that he intended to devise to said ■children said lot 95 for a permanent home; that they have been in continuous, open, notorious and adverse possession of said lot 95 as and for a homestead, and are now in such occupancy, and other averments. These allegations, as I have remarked, are distinctly proved by the testimony, and ■proof was made of the arrangement between Joseph S. Hull and his wife and his father respecting the abandonment by Joseph S. Hull of his project of removing to Kansas and remaining there, and this is"the prayer of the petition.
Now, we think that without any further allegations in this cross-petition, the defendants are entitled to a decree which shall protect them against any partition of this particular Jot 95, and which shall secure them in their possession and occupancy and enjoyment of that lot, and with a slight amendment to this cross-petition alleging this arrangement •to be based upon the consideration which I have mentioned, *700 we should be of opinion that there should be granted affirmative relief; that is to say, that this plaintiff here and his mother should be decreed to quitclaim and surrender any such claim that they set up against these children. I name these children, because, although in our judgment we are not permitted to undertake to reform this will — to correct the statement of the testator — yet we may look upon the language as used in this will as we might look upon any other document he had written, as showing a purpose upon his part to secure to these children the title to this lot 95, and the decree of the court will be in accordance with this opinion.